CATHERINE SASKILL *et al.*, Plaintiffs-Appellees, *v.* 4-B ACCEPTANCE *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 82—380

Opinion filed August 17, 1983.

Jerome H. Torshen, Ltd., and Terrance E. Leonard, Chartered, both of Chicago (Jerome H. Torshen and Abigail K. Sprey, of counsel), for appellants.

William J. Harte, Ltd., of Chicago (William J. Harte and John B. Austin, of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Catherine Saskill brought this action against defendants 4-B Acceptance, Joseph Buttitta and Jack Buttitta, alleging that a loan made by defendants to plaintiff at a usurious rate of interest violated the Illinois Interest Act. (Ill. Rev. Stat. 1979, ch. 74, par. 1 *et seq.*, now codified at ch. 17, par. 6401 *et seq.*) Jack Buttitta was dismissed as a defendant prior to trial. After a trial without a jury, the trial court satisfied the indebtedness of plaintiff due under the loan and entered judgment for $127,242.10 plus fees and costs. The trial court subsequently reduced the amount of the judgment from $127,242.10 to $75,000. Defendants appeal.

Plaintiff was the beneficial owner of residential property which was sold pursuant to a mortgage foreclosure. When plaintiff spoke to Jack Buttitta about a loan of $90,000 to redeem her property, he referred plaintiff to attorney Arthur Newell, who had done legal work for the Buttitta family businesses. Plaintiff met Newell in May 1979 and signed a letter authorizing Newell, as her attorney, to review the documents relating to her property. Plaintiff next heard from Newell a few days before June 5, the expiration date of the redemption period, and was instructed to bring $5,000 to his office on June 4.

At Newell's office, plaintiff met Joseph Buttitta, an attorney, insurance broker and sole proprietor of 4-B Acceptance, a company which provides financing for 4-B Auto Brokers, a business owned by his brother Jack. Newell informed plaintiff that Buttitta had agreed to lend her $100,000 which, along with her $5,000, would enable her to redeem her property. Plaintiff signed a loan disbursement prepared by Newell which distributed loan proceeds as follows:

| | |
|---|---:|
| "Redemption to Cook County Sheriff | $ 90,079.28 |
| 1st Installment of 78 taxes | 2,510.42 |
| Casualty Insurance | 550.00 |
| Title Charges and Recording | 496.25 |
| Escrow for Taxes | 2,400.00 |
| Interest through 6/30/79 | 915.83 |
| Chicago Title & Trust fees | 145.00 |
| Miscellaneous Fees | 2,000.00 |
| Services of K. Anderson | 100.00 |
| Loan Charges | 4,948.22 |
| Miscellaneous Personal Payouts | 10,000.00 |
| Returned to C. Saskill | 855.00 |
| TOTAL | $115,000.00." |

Thus, in exchange for $100,000 Buttitta received a note for $115,000 at 11% interest, the then authorized maximum legal rate of interest on residential loans, a check for $4,900 for loan charges and two other checks for taxes and interest. Plaintiff contributed $4,145 to the transaction.

In July, plaintiff requested from Newell copies of all the transaction documents as well as·an explanation as to what happened to her $5,000. In September, plaintiff picked up copies of the transaction papers from Newell. Plaintiff told Newell that she would begin making loan payments when her cash contribution was returned. The money was not returned. Plaintiff thereafter filed the present suit alleging that defendant's extraction of miscellaneous fees, loan charges, miscellaneous personal payouts as well as plaintiff's contribution of $4,145 constituted interest in addition to the maximum legal rate of interest charged in the note and therefore rendered the loan usurious.

At trial, plaintiff established that the terms of the loan were never discussed with her before the June 4 meeting. Testimony was conflicting, however, as to the extent of Buttitta's input regarding the loan terms. Buttitta denied discussing the terms of the loan with Newell prior to June 4, and testified that he was only told by Newell to bring $100,000 on June 4 to invest. At Newell's office, Buttitta reviewed the disbursement statement and relied on Newell's figures. He asked only about the $10,000 miscellaneous personal payouts and why he was lending $100,000 and receiving in return a note for $115,000. Newell replied that he should leave the transaction to Newell. Buttitta sat back, heard Newell explain the disbursement statement to plaintiff, and then accepted the terms of the agreement. Upon returning to his office, Buttitta asked his bookkeeper to examine the note because it "didn't look good," but later attempted to collect on it.

In contrast, Newell testified that he had discussed the terms of the loan with Buttitta prior to June 4, and that a charge of 15 to 20 percentage points had been mentioned. Ultimately, Buttitta wanted 15 points in addition to the 11% interest rate. The amounts designated as loan charges and miscellaneous payouts were part of the 15 points discussed. The sum of $10,000, or 10 points, designated as miscellaneous personal payouts, was included in the principal sum on the note so that this amount would be included in the interest calculation over the 25-year period. Newell did this to protect against fluctuating interest rates and to "sweeten the pot" in order to induce Buttitta to make the loan. Newell stated that he did not know then that percentage points are treated as interest in interest rate computations. .

The trial court found that plaintiff had demonstrated by clear and

convincing evidence that defendants received exactly what they sought, that is, 11% interest plus 15 percentage points carried over the 25-year period of the note, plus $5,000 in cash as loan charges. Accordingly, the court entered judgment for plaintiff and awarded damages pursuant to section 6 of the Interest Act.

On appeal, defendants contend that section 6, the usury penalty provision, is inapplicable to the present loan transaction, that the trial court improperly construed section 6 to determine the amount of damages, and that section 6 is unconstitutional.

We first address defendants' contention that the present loan transaction is exempt from the penalty provisions of section 6. Pursuant to section 6, an obligor is entitled to recover statutory damages "[i]f any person or corporation knowingly contracts for or receives, directly or indirectly, by any device, subterfuge or other means, unlawful interest, discount or charges for or in connection with any loan of money ***." It further provides, however, that "[a] *bona fide* error in connection with the loan shall not be a violation under this section if the lender corrects the error within reasonable time." Ill. Rev. Stat. 1979, ch. 74, par. 6.

Defendants admit that the interest charged in the transaction is excessive. They assert, however, that it was not intentionally excessive, but rather that it was the result of *bona fide* errors made by defendants and Newell. Specifically, they argue that the usurious interest rate resulted in part from Newell's *bona fide* error regarding the treatment of percentage points as interest, and in part from bona fide errors made in the transaction documents regarding the amount of principal.

■ Whether a loan is usurious depends on whether the party intended to charge unlawful interest. (*Dobie v. Livengood* (1957), 12 Ill. App. 2d 343, 139 N.E.2d 599.) This question of fact is determined by the nature and substance of the transaction rather than its form, to insure against evasion of the statute by a party's ingenious schemes or devices. (*Chicago Title & Trust Co. v. Jensen* (1933), 271 Ill. App. 419.) Because the trial judge sitting as trier of fact is in a superior position to hear and weigh the evidence and determine the credibility of the witnesses, the findings of the trial court will not be disturbed unless they are against the manifest weight of the evidence. *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205.

■ While the testimony was conflicting and although Newell may have been mistaken about the computation of interest rates, the evidence set forth above which was before the trial court makes it clear that defendants and Newell knew that plaintiff was being charged

more for the use of defendants' money than the statute permits. Defendants may not evade the statute by assessing charges for the use of their money under the guise of a charge labeled as something other than interest. Furthermore, defendants' argument that an incorrect amount of principal was mistakenly inserted in the loan transaction documents due to the pressure of the approaching redemption period expiration date is irrelevant to defendants' *bona fide* error defense. That alleged error bears only upon whether defendants intended to charge plaintiff a total of 15 or 20 points. Since defendants charged the maximum rate, the intentional charge of any percentage points in addition to this interest was a clear violation of the usury statute. Thus the trial court's findings that plaintiff established by clear and convincing evidence that defendants intentionally charged unlawful interest and that the usurious interest was not the result of *bona fide* errors are fully supported by the manifest weight of the evidence.

While we need not address further defendants' *bona fide* error defense, we note that the defense is available only to those lenders who attempt to correct such errors within a reasonable time. (Ill. Rev. Stat. 1979, ch. 74, par. 6.) Upon review of the conflicting evidence as to when defendants had notice of the errors, we find the trial court's determination that defendants' efforts to correct the errors after suit was filed was not within a reasonable time, not to be against the manifest weight of the evidence. See *Greene v. City of Chicago.*

■■■ Defendants next contend that the award of damages is incorrect because it is based upon an erroneous interpretation of the penalty computation provisions of section 6. When a person or corporation knowingly exacts usury, section 6 provides that the obligor may recover:

> "an amount equal to twice the total of all interest, discount and charges determined by the loan contract or paid by the obligor, whichever is greater, plus such reasonable attorney's fees and court costs as may be assessed by the court against the lender. The payments due and to become due including all interest, discount and charges included therein under the terms of the loan contract, shall be reduced by the amount which the obligor is thus entitled to recover." Ill. Rev. Stat. 1979, ch. 74, par. 6.

In calculating plaintiff's damages, the trial court followed the explicit language of the statute. It doubled the amounts of all interest, discount and charges assessed against plaintiff to obtain the amount of recovery to which plaintiff was entitled. This amount was then set off against the amounts of payments due and to become due under

the contract. Because of the length of the loan and the total amount of interest defendants sought to gain, plaintiff's indebtedness on the note was fully satisfied and in addition she was entitled to recover $127,242.10, the amount remaining after the set-off.

Defendants argue that the trial court's interpretation of section 6 imposed a forfeiture and an unconscionable result, contrary to law and common sense. They urge that, when given a proper construction, the penalty provision which sets forth the amount of recovery as "twice the total of all interest, discount and charges," should be construed to mean unlawful interest. We disagree.

The primary rule of statutory construction is to give effect to the intention of the legislature. Legislative intent is derived primarily from a consideration of the statutory language itself. (*People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 432 N.E.2d 855.) Here, the language setting forth the method of calculating damages is clear and unambiguous. It states that when a lender intentionally charges unlawful interest the obligor may recover double the amount of all interest determined by the contract. It is difficult to imagine a clearer expression of legislative intent as to the calculation of damages.

Defendants' argument that the trial court's interpretation contravenes the intent of the legislature to eliminate forfeitures from the usury statute is simply erroneous. Before 1963, both section 6 and section 8 of the Act contained the same penalty clause which provided the usurers "shall forfeit the whole of the interest so contracted to be received and shall be entitled only to recover the principal sum due ***." (Ill. Rev. Stat. 1961, ch. 74, pars. 6, 8.) Defendants argue that the 1963 substitution of section 6's present penalty, the concurrent substitution of section 8's language which retained the forfeiture language and stated that persons "shall be subject to section 6 of the Act," and the ultimate elimination of a penalty clause in section 8 in 1981, show an intent to eliminate forfeitures from the Act. Pursuant to the 1963 amendments, unwitting userers forfeit all interest charged on the note, while intentional userers may be charged double the total of all interest charged plus attorney fees and court costs. Thus, contrary to defendants' contention, the legislature did not intend to eliminate forfeiture of all interest for those who knowingly charged excessive interest. Moreover, the ultimate elimination of the section 8 penalty in 1981 merely evidences the legislative intent to eliminate any penalty for unintentional userers.

We also reject defendants' contention that the trial court's interpretation is contrary to the purpose of the Act. The purpose of the

usury statute is to protect weak and necessitous borrowers, such as plaintiff, from oppression of unscrupulous lenders. (*Firebaugh v. Seegren* (1932), 265 Ill. App. 381.) Certainly, a penalty imposing harsh consequences only upon knowing violators is consistent with this purpose. Thus, the trial court's award of damages was correct. See *Merchandise National Bank v. Scanlon* (1980), 86 Ill. App. 3d 719, 408 N.E.2d 248; *Jones & Brown, Inc. v. W. E. Erickson Construction Co.* (1979), 73 Ill. App. 3d 481, 391 N.E.2d 1097.

■■ ■ Defendants' final contention is that section 6 of the Act is unconstitutional. Although defendants argue that the penalty provisions of section 6 are vague and contradictory and therefore deny lenders due process of law, we have determined above that these provisions are clear, consistent and unambiguous. We therefore need not further address that argument. Defendants also maintain that as construed by the trial court the penalty is not rationally related to the severity of the offense, creates an irrational classification between long-term and short-term loans and operates to treat such loans unequally.

There is, however, an obvious rational basis for the computation provisions of section 6 which allow greater recoveries for greater loan periods. The length of the loan directly affects the amount of interest the lender ultimately seeks to gain. Thus, these penalty provisions are rationally related to legitimate State interests and therefore do not violate either the due process or equal protection clauses of the Federal or State constitutions.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE and O'CONNOR, JJ., concur.