WESTERN NATIONAL BANK OF CICERO *et al.*, Plaintiffs-Counter-defendants, v. RICHARD C. MOENNING, Defendant-Counterplaintiff (Richard C. Moenning *et al.*, Plaintiffs; La Salle National Bank, Trustee, *et al.*, Defendants).

First District (6th Division) Nos. 1—90—0371, 1—90—2001 cons.

Opinion filed December 20, 1991.—Rehearing denied January 28, 1992.

Richard C. Moenning, of Chicago, *pro se*, for appellants.

Hauselman & Rappin, Ltd., of Chicago, and Law Offices of Joseph M. Williams, of St. Charles (Martin F. Hauselman, Rhoda E. Markovitz, and Joseph M. Williams, of counsel), for appellees Western National Bank of Cicero and S. Louis Rathje.

JUSTICE McNAMARA delivered the opinion of the court:
This appeal arises from the consolidation of two cases. In the first, plaintiffs, Western National Bank of Cicero and Western National Bank of Cicero, as trustee (collectively Western National), filed a complaint against Richard Moenning alleging default on a promissory note. In the second case, Richard and Margot Moenning (hereinafter "Moenning" or "the Moennings") filed a complaint against La Salle National Bank, as trustee (La Salle), and S. Louis Rathje for declaratory relief and damages and suit to quiet title. Rathje counterclaimed to recover on a second promissory note, a guarantee and his claim for various expenses paid on Moenning's behalf.

The relevant facts as adduced from the pleadings, depositions and trial testimony are set forth below.

In September 1974, the Moennings conveyed title to their home to the La Salle National Bank as trustee under trust number 40193. By 1976, Moenning was heavily in debt to the Harris Savings and Trust Bank (the Harris Bank), the indebtedness secured by the residence, insurance and Margot's stock. In May 1980, Moenning signed a note for a new loan with the Harris Bank for $35,382 at 8% interest which was guaranteed and secured by S. Louis Rathje, Margot's brother and an attorney. In 1982 and 1983, Moenning, also an attorney, defaulted on between 14 and 17 payments. John Benton, a Harris Bank employee, testified that in 1984 the Harris Bank required that Rathje, as guarantor, pay off Moenning's entire debt. Rathje repaid the loan in full without notice to Moenning. (Moenning admitted at trial that he owed Rathje $34,108.01 plus interest, and the trial court entered judgment on Rathje's amended counterclaim for this debt.)

In April 1981, the Internal Revenue Service commenced collection proceedings against the Moennings for income taxes owed. Rathje paid $14,719 to the IRS on the Moennings' behalf in exchange for a 100% assignment of their land trust and a promissory note dated

April 23, 1981, at 14% interest for the amount due. (Moenning admitted at trial that he owed this debt and the trial court accordingly entered judgment for Rathje on this portion of his amended counterclaim.) The assignment transferred to Rathje "ALL (100%) of the entire beneficial interest in, to and under" the Moennings' trust agreement. The document specifically referred to an April 22, 1981, letter from Moenning to Rathje which states in pertinent part as follows:

"[Y]ou now promise to loan to me to pay [the IRS] *** provided that Margot and I assign to you, *** the entire (100%) beneficial interest of the [land trust]. I agree to make such an assignment only because you have represented to me that this is the sole basis on which you will loan me money to pay [the IRS], *** and 3) your promise to immediately reconvey this beneficial interest when $13,719.20 is repaid to you. ***

I appreciate your need to feel secure, the business basis for this request and transfer and your willingness to save and protect the property from forced sale or foreclosure as my cash flow improves to service all debt."

The trust agreement between La Salle and the Moennings provided in pertinent part as follows:

"(F) It is understood and agreed by the parties hereto and by any person who may hereafter become a beneficiary hereunder, that said LASALLE NATIONAL BANK will deal with [the Evanston property or title to the Evanston property] *** on the written direction of such person or persons as may be the beneficiary or beneficiaries at the time, or on the written direction of Richard C. Moenning, *** or such other person or persons who as shall be from time to time named in writing by the beneficiary or beneficiaries ***."

In May 1985, Rathje, as beneficiary, directed La Salle to convey the Evanston real estate to the Rathje trust at Western National. Rathje testified that he did this to prevent future foreclosures and to prevent Moenning from mortgaging the interest. La Salle complied with Rathje's direction and closed Moenning's trust. Joseph Lang, La Salle's attorney, testified at trial that La Salle closed the trust on May 1, 1985, based upon the 100% assignment of beneficial interest to Rathje. Rathje testified that at the time of this transfer, the land trustee deleted the reference in the assignment to the April 22 letter. Moenning claims that he did not learn of such alteration of the assignment until late 1982. In September 1981, First Federal of Wilmette, the Moennings' lender, began foreclosure proceedings against the

Moennings and La Salle as trustee. A judgment of foreclosure was entered and the premises were sold at a sheriff's sale in May 1984. On November 1, 1984, Moenning redeemed the property. On the day before the redemption period expired, Moenning contacted Charles Mallen, an officer at Western National, pursuant to Rathje's suggestion. Mallen told Moenning that Western National would make an unsecured $94,600 loan at 14% interest to Moenning to redeem the residence and that Rathje's mother agreed to guarantee the loan. Moenning executed and delivered the note on November 1, 1984, and testified that he read and understood the note. He received three checks from Western National totaling $94,600 which funds the bank disbursed from the Rathje trust at Rathje's request and acting as his agent. The note was renewed three times for 90 days each at 12% *per annum* interest until maturity. The last note was executed on July 29, 1985. Prior to July 1985, Moenning reduced the principal balance by $1,100 and paid all interest. Moenning subsequently made no payments.

In February 1986, Western National filed a complaint in its individual capacity against Moenning alleging default on the July 1985 note. Western National subsequently moved for summary judgment. Moenning's cross-motion for summary judgment alleged: failure of consideration because the money came from Rathje's trust, not from Western National *per se*; usury; and fraud. After a hearing, the court denied both summary judgment motions, noting that "the only basis" for denying Western National's summary judgment motion was that Western National as trustee, not individually, was the holder of the note. Western National subsequently amended its complaint to add the bank in its trustee capacity as plaintiff.

Moenning subsequently filed a five-count counterclaim against Western National, La Salle and Rathje which he subsequently amended. After the court struck three counts with prejudice, counts I and IV remained. Count I against Western National and Rathje was an action for declaratory and injunctive relief requesting an adjudication of the parties' rights and liabilities under the July 1985 note, and a judgment that Western National, acting as Rathje's undisclosed agent, knowingly and illegally charged usurious interest. Count IV against Rathje alleged breach of fiduciary duty.

Rathje's amended counterclaim against Moenning sought to recover: (1) $14,719 plus 14% interest on the note; (2) $35,382 plus interest for the Harris Bank loan, which Rathje paid after Moenning's default; and (3) $7,880 plus statutory interest for Rathje's payments on Moenning's behalf for utility bills, land trust charges and legal

fees. Moenning's answer and affirmative defenses alleged breach of assignment of beneficial interest in the trust by Rathje, improper payment by Rathje on his guarantee and failure of consideration.

In October 1989, trial began on Western National's amended complaint, counts I and IV of Moenning's second amended counterclaim and on the three counts of Rathje's amended third-party counterclaim. Mallen testified that the money given to Moenning in November 1984 came from Rathje's living trust; that Rathje initiated the loan and the suit; and that the principal and interest payments were credited to Rathje's trust. Rathje testified that at his suggestion, Western National loaned Moenning money and that Western National would not otherwise make the loan. He stated that his intent was to make a personal loan to Moenning of $94,600 through the bank in order to redeem Moenning's property from sale. From 1981 through 1990, Moenning never made any payments to Rathje. Moenning lived in the Evanston home rent free since 1981, and Rathje "frequently" paid the taxes and the insurance.

The trial court entered judgment for Western National against Moenning for $157,073.58 ($93,500 principal plus $63,573.58 interest); for Rathje against Moenning for $27,710 ($14,719 principal plus $12,990.80 interest), $49,783.27 ($34,108.01 principal plus $15,475.25 interest) and $12,211.77 ($6,661.11 principal plus interest of $5,550.66), respectively, on his three-count amended counterclaim; and against Moenning on his counterclaim. The court ruled that when Moenning paid the judgment, Rathje would give the house to Moenning. The court subsequently granted Western National's petition for $6,507.81 in attorney fees.

On appeal, Moenning first argues that Western National had no right, interest or title in the promissory note because the loaned funds came from Rathje's trust. Moenning therefore seeks reversal of the judgments for Western National on the note and on attorney fees. Western National responds that it properly loaned the funds as trustee of Rathje's trust and therefore had an interest in the promissory note.

■■ ■ Pursuant to the Illinois Trusts and Trustees Act (Ill. Rev. Stat. 1985, ch. 17, par. 1651 *et seq.*), a trustee has the power to "borrow money and to mortgage, pledge or otherwise encumber any part or all of the trust estate." (Ill. Rev. Stat. 1985, ch. 17, par. 1657.) The power to borrow money is incidental to a bank's general banking power. (5 Ill. L. & Prac. *Banks* §143 (1953).) Moreover, a bank may properly lend money on deposit for a customer. (5 Ill. L. & Prac. *Banks* §152 (1953).) Under such circumstances, "the bank is an agent

\*\*\* of the customer, and as such agent it has authority to accept on behalf of its customer, payments of principal and interest on the loan." 9 C.J.S. *Banks and Banking* §384(b) (1938).

■ We conclude that under Illinois law, Western National, as trustee of the Rathje trust, was empowered to loan the funds from Rathje's trust to Moenning. Indeed, the very nature of a banking institution is to lend funds that belong to other people. The fact that Western National in its capacity as trustee transferred funds to itself as bank which then made the loan to Moenning does not alter Moenning's liability to Western National. The note itself evidences the obligation between Moenning and Western National. Indeed, Moenning executed and delivered the promissory note to Western National and renewed the note three times. Moreover, he admitted that he read the note and knew what he was doing. Nor do we find the note ambiguous in any material aspect. We reject Moenning's claim that Western National had no right to sue on the note because it acted as Rathje's agent and at his request to disburse and collect the money. Under Illinois law, Western National had authority pursuant to Rathje's direction to lend funds from his trust and to accept payments of principal and interest. Moreover, the trial judge sitting as trier of fact determined that Western National had title to the note, presumably after weighing the evidence adduced at trial and assessing the credibility of witnesses. We do not believe such finding is contrary to the manifest weight of the evidence and therefore decline to disturb it. (*In re Estate of Wiese* (1989), 178 Ill. App. 3d 938, 533 N.E.2d 1183.) For these reasons, we conclude that Western National had title to the note, and we find that the trial court properly treated Western National as a party plaintiff.

■ We also reject Moenning's related claim that the trial court erred in awarding legal fees in favor of Western National. Where a promissory note contains a provision authorizing reasonable attorney fees expended to recover on the note, the trial court may properly award such fees in judgment. (See *Main Bank v. Baker* (1981), 86 Ill. 2d 188, 427 N.E.2d 94; *First National Bank & Trust Co. v. Van Hilsen* (1970), 125 Ill. App. 2d 305, 260 N.E.2d 867 (abstract of opinion).) The note in this case provides in pertinent part:

> "Undersigned (Moenning) agrees to pay reasonable attorneys' fees, costs and expenses incurred by Lender in the collection and enforcement of this note."

Because we conclude that Western National has a legitimate interest in the note, the note's provision for attorney fees applies to Western

National. The trial court therefore properly awarded it reasonable attorney fees expended in recovering on its note.

▪ We next consider Moenning's claim that the interest collected by Western National violated the Illinois Interest Act (Ill. Rev. Stat. 1985, ch. 17, par. 6401 *et seq.*). The Illinois Interest Act applicable when this note was executed prescribed the maximum interest rate that may be lawfully contracted for "between any person and any other person or corporation" was 9% *per annum*. (Ill. Rev. Stat. 1985, ch. 17, par. 6404(1).) Pursuant to the Act, however, this statutory rate expressly does not apply to State banks. (Ill. Rev. Stat. 1985, ch. 17, par. 6404(1).) Whether a loan is usurious depends on whether the party intended to charge unlawful interest. (*Saskill v. 4-B Acceptance* (1983), 117 Ill. App. 3d 336, 453 N.E.2d 761.) Moreover, we may consider the nature and substance of the transaction rather than its form, to insure against evasion of the statute by a party's ingenious schemes. *Saskill v. 4-B Acceptance* (1983), 117 Ill. App. 3d 336, 453 N.E.2d 761.

▪ Moenning argues without authority that because the Rathje trust made the loan "through the bank," Western National acted as Rathje's agent and therefore could not charge a higher rate of interest than its principal, the Rathje trust. Western National responds that the interest rate charged was not excessive because it loaned the funds and the statutory usury rate does not apply to banks. We agree. As indicated above, we believe that Western National could legally lend money from Rathje's trust pursuant to its inherent banking powers. As such, the statutory rate does not apply to this note. Nor is there any evidence in the record that Rathje suggested the initiation of the note from Western National in order to evade the statutory interest provisions.

▪ We next consider Moenning's claim that the trial court after trial erred in entering judgment on counts II and III of Rathje's amended counterclaim. In count II, Rathje sought $35,382.90 plus interest for the amount he paid to Harris Bank as guarantor after Moenning defaulted on his payments. Moenning admits the loan but "denies the relief sought," arguing that Rathje failed to comply with the terms of the guaranty because Rathje did not pay the Harris Bank with Moenning's knowledge or at his request. This argument is unpersuasive and lacks any authority. Rathje signed an absolute guaranty, which is an unconditional promise by guarantor to be immediately liable upon principal's default, without notice. (*Lawndale Steel Co. v. Appel* (1981), 98 Ill. App. 3d 167, 423 N.E.2d 957.) Moenning

admitted the loan and his default. As such, we cannot conclude that the trial court erred in entering judgment on count II.

Pursuant to count III, the trial court entered judgment for Rathje for miscellaneous expenses paid on Moenning's behalf plus interest. Moenning challenges this judgment on the ground that Rathje voluntarily incurred these charges and that the interest rates charged were excessive and usurious. At trial, Rathje testified that Moenning owed him $6,661.11 plus interest for various payments made. The specific expenditures were set forth. Moenning admitted liability on certain payments made to the Harris Bank, and admitted that he owed $520 for payments made to Illinois Bell and the land trustee. Michael Moyski, a certified public accountant, testified that he computed the total interest owed for the expenses claimed under count III based upon an 8% or 14% rate of interest. Moyski could not explain, however, how the rates were chosen and why he applied different rates. Based upon this evidence, we believe that the interest award of $5,550.66 under count III was improper and exceeded the allowable statutory interest. We therefore reverse this portion of the judgment. We affirm, however, the award of the principal sum of $6,661.11 finding it to be supported by the evidence.

Moenning also contends that the trial court improperly dismissed counts II and III of his second amended counterclaim. We note that in reviewing a trial court's dismissal pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), we consider only questions of law presented by the pleadings and the sufficiency of the complaint by determining whether the essential elements of a cause of action were alleged. *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 478 N.E.2d 603.

Count II sought declaratory and other relief against Western National and Rathje. Count III was an action to quiet title to the Evanston real estate against Western National, Rathje and La Salle.

Upon review of the record, we conclude that the trial court properly dismissed counts II and III of Moenning's counterclaim because he had no legal, tangible interest sufficient to sustain an action for declaratory relief or an action to clear title. (Ill. Rev. Stat. 1989, ch. 110, par. 2—701; *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298; *Klingel v. Kehrer* (1980), 81 Ill. App. 3d 431, 401 N.E.2d 560.) Rathje held a 100% beneficial interest in the trust with the power of direction, and the April 22 letter was unambiguous. The trial court stated that even if La Salle's officer deleted the reference to the letter, such act was irrelevant because the assignment was absolute. We agree. The assignment

on its face unambiguously gave Rathje an absolute 100% interest in the land trust without specifically reserving a power of direction or indicating that the transfer was for collateral purposes only. Moreover, the April 22 letter did not in any way restrict Rathje from exercising the power of direction. In the letter, Moenning acknowledged that he assigned 100% of the beneficial interest. The letter's subsequent reference to Rathje's reconveyance upon Moenning's repayment of his outstanding obligations does not negate the assignment nor change its effect. Therefore, the deleted reference to the letter is of no consequence.

We finally consider Moenning's contention that the trial court erred in finding that Rathje was not Moenning's fiduciary. Our supreme court has stated:

> "A fiduciary or confidential relationship exists where, by reason of friendship, agency, business association and experience, trust and confidence are reposed by one person in another who, as a result, gains an influence and superiority over him." (*McCartney v. McCartney* (1956), 8 Ill. 2d 494, 499, 134 N.E.2d 789, 792.)

Factors to be considered include the degree of kinship, disparity of age, health and mental condition, and the extent to which the allegedly subservient party entrusted his business and financial affairs and reposed faith and confidence in the dominant party. (*Nemeth v. Banhalmi* (1981), 99 Ill. App. 3d 493, 425 N.E.2d 1187.) The fact of a blood relationship does not in itself establish a fiduciary relationship. (*Perry v. Wyeth* (1962), 25 Ill. 2d 250, 184 N.E.2d 861.) Nor does a creditor-debtor relationship necessarily constitute a fiduciary relationship. A fiduciary relationship must be established by such clear and convincing evidence that no other conclusion is possible. See *Beelman v. Beelman* (1984), 121 Ill. App. 3d 684, 460 N.E.2d 55.

Applying these factors, we conclude that a fiduciary relationship did not arise between Rathje and Moenning. Although Moenning claims that he placed trust and confidence in Rathje during a time of "financial *extremis*," Moenning did not entrust Rathje with the power to handle his business and personal financial matters (*Cf. Nemeth v. Banhalmi* (1981), 99 Ill. App. 3d 493, 425 N.E.2d 1187), nor does it appear that Rathje exerted influence over Moenning or occupied a dominant position over him. In fact, the assignment of beneficial interest and the April 22 letter, in which Moenning recognized "the business basis" for the assignment, suggest an arm's length transaction. Finally, both Rathje and Moenning are attorneys. There simply was no disparity of age, health, mental condition, education or busi-

ness experience between Rathje and Moenning sufficient to create a fiduciary relationship.

We note that although Moenning raised several challenges on appeal to the trial court's judgment in La Salle's favor, Moenning's counsel at oral argument conceded that the trial court correctly decided such issues. We, therefore, need not address them.

For the foregoing reasons, that portion of the orders which ordered Moenning to pay $5,550.66 in interest under count III of Rathje's counterclaim is reversed. In all other respects, the orders of the circuit court of Cook County are affirmed.

Affirmed in part; reversed in part.

RAKOWSKI, P.J., and EGAN, J., concur.