MT. VERNON MEMORIAL ESTATES, INC., Plaintiff and Counterdefendant-Appellant, *v.* ROBERT P. WOOD *et al.*, Defendants and Counterplaintiffs-Appellees.

First District (5th Division)    No. 80-591

Opinion filed September 12, 1980.

Lawrence S. Komar, of Burbank, for appellant.

Albert Koretzky, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff instituted proceedings to confirm its judgment by confession, and defendants counterclaimed. After a hearing, the trial court entered an

order which (1) vacated the confession judgment; (2) entered judgments for each defendant on their counterclaim; and (3) awarded attorney's fees to each defendant. On appeal, plaintiff does not contest the judgment vacatur but asserts only that the court erred in failing to dismiss the counterclaim. Defendants, in their cross-appeal, contend that the award of attorney's fees to them was inadequate and unreasonable.

The essential facts are not in dispute. Plaintiff obtained its confession judgment for the balance on a retail installment contract and attorney's fees. It then instituted proceedings to confirm the judgment, and eventually defendants filed an answer and counterclaim. In their answer, they set forth several reasons in support of their request to vacate the judgment and dismiss the proceedings. In their counterclaim, they alleged violations of the Truth in Lending Act (TILA), 15 U.S.C. §1601 *et seq.* (1976), and Regulation Z, 12 C.F.R. §226 (1973), a regulation issued pursuant to the TILA (15 U.S.C. §1604 (1976)), and they requested separate judgments and reasonable attorney's fees under section 1640(a) of the TILA.

After an evidentiary hearing, the confession judgment was vacated, judgments in the amount of $1,000 were entered for each defendant on their counterclaim, and each defendant was granted $132.50 in attorney's fees.

OPINION

Initially, it should be noted that plaintiff does not contest the vacatur of its confession judgment. It argues only that the trial court erred in denying its motion to dismiss defendants' counterclaim on the ground that it was not brought within the one-year limitation period set forth within section 1640(e) of the TILA, which provides:

"Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

While there is no question that the counterclaim here was filed more than one year from the date of the occurrence of the alleged violations, the trial court held that it was properly brought under section 17 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 18), which provides in pertinent part:

"A defendant may plead a set-off or counter claim barred by the statute of limitation, while held and owned by him, to any action, the cause of which was owned by the plaintiff or person under whom he claims, before such set-off or counter claim was so barred, and not otherwise * * *."

It is plaintiff's position that the limitation in the TILA is substantive

rather than procedural, and thus that any rights defendants had thereunder were extinguished when not exercised within one year and may not be reviewed through section 17 of the Illinois Limitations Act.

This court considered the same question in *Wood Acceptance Co. v. King* (1974), 18 Ill. App. 3d 149, 309 N.E.2d 403, where, in an action to recover money, a counterclaim of defendant's alleging TILA violations was filed more than one year after the violations occurred. After noting "the purpose of section 17 of the Limitations Act to be one of fundamental fairness as well as a desire to grant defendant his complete day in court" (18 Ill. App. 3d 149, 151, 309 N.E.2d 403, 405), this court stated:

> "Although our research into the congressional hearings on the enactment of the Federal Truth in Lending Bill fails to disclose the purpose behind the one year filing period, we note that the Act is intended to safeguard the consumer in connection with the utilization of credit and the enforcement of the Act is accomplished through the institution of civil actions. * * * We conclude that the one year limitation in which to bring the federal right is not such an integral part of the Federal Truth in Lending Act as to outweigh the combined purposes of that Act and section 17 of the Limitations Act."

■■ Plaintiff argues, however, that the reasoning of *Wood Acceptance* is no longer sustainable. In support of this position, it refers us to *Smith* v. *No. 2 Galesburg Crown Finance Corp.* (7th Cir. 1980), 615 F.2d 407, and *Basham v. Finance America Corp.* (7th Cir. 1978), 583 F.2d 918, *cert. denied sub nom. DeJaynes v. General Finance Corp.* (1979), 439 U.S. 1128, 59 L. Ed. 2d 89, 99 S. Ct. 1046, as well as to cases from foreign jurisdictions. While both *Smith* and *Basham* held that TILA counterclaims brought after the expiration of the one-year limitation period are barred, in neither decision was it determined whether the limitation period could be waived by a statute such as section 17 of the Limitations Act and, to this extent, they are inapposite to the case at bar. Moreover, this court, in *National Boulevard Bank v. Thompson* (1980), 85 Ill. App. 3d 1145, 1148, 407 N.E.2d 739, 740, recently reviewed the remaining authority cited by plaintiff, as well as other cases decided subsequent to *Wood Acceptance*, and drew the following conclusion:

> "[T]hough not unanimous, the clear weight of authority is in accord with the result reached in [*Wood Acceptance*] and supports our continued adherence thereto."

We, too, see no reason to disagree with the reasoning of *Wood Acceptance*, and we conclude that it properly permitted the counterclaim under section 17 of the Limitations Act.

Defendants contend, in their cross-appeal, that the court's award of

attorney's fees was inadequate. We agree, as section 1640(a)(3) of TILA (15 U.S.C. §1640(a)(3) (1976)) provides that a "reasonable attorney's fee" be awarded to a successful litigant.

■■ The trial court has broad discretion in awarding attorney's fees under the TILA, and its award will not be disturbed absent a showing of an abuse of that discretion. (*Carr v. Blazer Financial Services, Inc.* (5th Cir. 1979), 598 F.2d 1368; *Merchandise National Bank v. Scanlon* (1980), 86 Ill. App. 3d 719, 408 N.E.2d 248.) However, the reasonableness of attorney's fees is not to be left to "local custom, conjecture or guesswork[;] [e]ach award must be made on its own merits and should be justified in each particular case." *64 East Walton, Inc. v. Chicago Title & Trust Co.* (1979), 69 Ill. App. 3d 635, 649, 387 N.E.2d 751, 760; *Larkin Bank v. Ishak* (1976), 43 Ill. App. 3d 918, 921, 357 N.E.2d 840, 841.

■■ In the case at bar, the court did not permit defendants to offer proof as to reasonable attorney's fees; rather, it summarily applied the fee schedule of the Clerk of the Circuit Court[1] applicable to judgments by confession and awarded attorney's fees of $132.50 to each defendant. Plaintiff has not referred us to nor have we found anything in the record to justify a conclusion that such a schedule could be the basis of an award of reasonable fees under TILA.

This court recently stated, in *Merchandise National Bank v. Scanlon* (1980), 86 Ill. App. 3d 719, 730, 408 N.E.2d 248, 256:

> "The [Truth in Lending] Act embodies the national policy that economic stabilization and competition will be enhanced if consumers are given accurate and meaningful disclosure of credit. (15 U.S.C. 1601 (1970).) Enforcement of this policy was placed primarily on the private sector through suits for civil penalties. A provision for attorney's fees helps assure that enforcement will take place. But such a provision is rendered meaningless unless attorneys for successful parties are given reasonably adequate compensation for their services. The need for adequate compensation is particularly important since the statutory penalty is limited to $1000. If a presumption is imposed that a successful attorney is allowed only the amount recovered by his client, creditors can effectively preclude the filing of all Truth in Lending actions. By refusing to

---

[1] The schedule is as follows:

$   500.00 and under . . . . . . . . . .$7.50, plus 15% of entire amount.
$   500.00 to $1,000.00 . . . . . . . .$82.50, plus 10% of the excess over $500.00
$1,000.00 and over . . . . . . . . . . .$132.50, plus 5% of the excess over $1,000
Neither the authority of the Clerk to schedule fees nor the bases for the amounts scheduled appear in the record.

negotiate even reasonable claims and by litigating every case, creditors can soon force a debtor to terminate litigation, not because his claim is invalid but because it is no longer economically feasible for his attorney to continue the case." (See also *Hannon v. Security National Bank* (9th Cir.1976), 537 F.2d 327.)

If, as a general policy, courts were to apply a fee schedule such as that used here, or for that matter to award fees on any basis other than reasonableness, it could effectively preclude the filing of many TILA actions, which of course would be contrary to its spirit and policy.

Defendants also seek attorney's fees for legal services rendered in connection with the appeal of the instant case. Federal courts have taken the position that additional attorney's fees may be awarded for a meritorious appeal in TILA litigation. (See, *e.g., Sosa v. Fite* (5th Cir. 1974), 498 F.2d 114; *Thomas v. Myers-Dickson Furniture Co.* (5th Cir. 1973), 479 F.2d 740.) On remand, therefore, the trial court should also consider a request for and make a determination of reasonable attorney's fees for the instant appeal.

Guidance with respect to fees may be found in the Federal rule as expressed in *Northcross v. Board of Education* (6th Cir. 1979), 611 F.2d 624, 642-43 as follows:

"We conclude that an analytical approach, grounded in the number of hours expended on the case, will take into account all the relevant factors, and will lead to a reasonable result. The number of hours of work will automatically reflect the 'time and labor involved,' 'the novelty and difficulty of the question,' and 'preclusion of other employment.' The attorney's normal hourly billing rate will reflect 'the skill requisite to perform the legal service properly,' 'the customary fee,' and the 'experience, reputation and ability of the attorney.' Adjustments upward may be made to reflect the contingency of the fee, unusual time limitations and the 'undesirability' of the case. Thus, applying the approach used in this decision will result in an award reflecting those considerations traditionally looked to in making fee awards, but will also provide a logical, analytical framework which should largely eliminate arbitrary awards based solely on a judge's predispositions or instincts." See also *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir. 1973), 487 F.2d 161.

See also *64 East Walton, Inc. v. Chicago Title & Trust Co.*, where this court, in determining reasonable attorney's fees, said that the following factors should be considered:

"'[T]he nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of responsibility involved, the standing or skill of the person employed, and the

time and labor involved. [Citations.] The allowance should only be in such amount as will compensate for the services rendered, and must be fair and just to all parties concerned; namely, the attorney to be compensated, the client, and the person required to make the payment. [Citation.] Furthermore, it should appear that the work being compensated for was reasonably required and necessary for the proper performance of the legal services involved in the case. [Citation.]' " 69 Ill. App. 3d 635, 648-49, 387 N.E.2d 751, 759-60 quoting *Canham v. Saisi* (1978), 65 Ill. App. 3d 686, 693, 382 N.E.2d 654, 659.

For the reasons stated, that portion of the judgment order appealed from awarding $1,000 to each defendant on their counterclaim is affirmed; but that portion awarding attorney's fees of $132.50 to each defendant is reversed, and this cause is remanded for a hearing to determine an award of reasonable attorney's fees to each defendant consistent with the content of this opinion.

Affirmed in part; reversed in part and remanded.

MEJDA and WILSON, JJ., concur.

