JERRY SERRITELLA, Plaintiff-Appellee, *v.* NINA PLOTKIN, Defendant-Appellant.

Third District    No. 80-158

Opinion filed October 7, 1980.—Rehearing denied October 27, 1980.

Nina Stevenson Plotkin, of Washington, for appellant, *pro se.*

Jerry Serritella, of Peoria, for appellee, *pro se.*

Mr. JUSTICE SCOTT delivered the opinion of the court:

In this *pro se* appeal by Nina Stevenson Plotkin, the defendant, attorney's fees awarded to the plaintiff, Jerry Serritella, are challenged. These fees, amounting to $12,500, were incurred as a result of the plaintiff representing the defendant during her dissolution of marriage and were in addition to a $500 retainer paid to the plaintiff by the defendant.

■■ A determination of what amounts to reasonable attorney's fees depends on the circumstances of each case and requires the consideration of the time expended, the work done, the complexity of the issues and the expertise of the attorney. (*Larkin Bank v. Ishak* (1976), 43 Ill. App. 3d 918, 357 N.E.2d 840.) The evidence presented to the trial court in the case at bar justifies the fee awarded.

Attorney Serritella testified that Mrs. Plotkin agreed to the fee orally but refused to sign a written agreement because of certain language in the contract which did not pertain to the amount of the fee. On the other hand, the defendant testified she always maintained the fee was too high

and that was the reason for refusing to sign the contract. Since the trial court observed the witnesses as they testified, the trial court is in a better position than is this court to assess the credibility of the witnesses. From the evidence the trial court could have found that the fee had been agreed to by the defendant and that the fee charged was reasonable in light of the nature of the plaintiff's representation of the defendant.

The issues involved in this case were complex. In addition to a question of child custody, the value of the property, the distribution of which was contested, was between $550,000 and $750,000. The marriage which was dissolved had a duration of 15 years. During that time marital and nonmarital property were commingled, raising difficult issues concerning distribution. The complexity was increased by the fact that a new act had to be applied (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*) and very little case law had developed to construe the legislation. Furthermore, there were substantial issues concerning the tax implications of the distribution.

The plaintiff testified he spent approximately 30 hours in court and, for every hour in court, an additional two or three hours preparing for trial. Although a co-counsel also appeared in the case for the defendant, the defendant and the attorney who represented the defendant's ex-husband during the dissolution proceedings testified that the plaintiff conducted all direct and cross-examination and presented all arguments at the trial, which covered five days spread out over 4½ months. At the hearings approximately 100 exhibits were offered by the parties. The plaintiff also prepared and submitted a brief to the trial court.

Although the defendant denied it, the plaintiff also testified that the defendant came to his office for appointments on about 15 occasions, came unannounced on 15 other occasions, and called him at home on the average of five times per week during the seven months he represented her. In addition the plaintiff testified that during the time the trial court had the decision under advisement the defendant's son came to the plaintiff's office every day.

Prior to the first hearing on the issues of custody and property distribution, settlements were worked out by the parties only to have the defendant, after agreeing to the terms, change her mind and ask that a greater amount be given to her. The last such settlement would have distributed between $170,000 and $190,000 to the defendant. This settlement had been proposed by the defendant, but on the day the cause was set to be heard and after the offer had been accepted by her husband, she reneged.

Yet, after contesting the matter for the defendant, the plaintiff actually attained for the defendant a distribution which exceeded her own settlement offer. The trial court, after determining that the marital assets totalled $415,358.36, awarded $217,679.18 to the defendant, as well as

dividing all personal property equally between the parties and ruling that the defendant was to retain her own real estate business.

As for the plaintiff's expertise, there was testimony presented to the effect that the reason the defendant asked the plaintiff to represent her was because she had heard he was a "scrapper" and she did not want any further delays in the dissolution proceedings. The attorney for the defendant's ex-husband testified that he had gotten involved in the case in October or November of 1977, but until the plaintiff entered the case in May of 1979, only some discovery by way of interrogatories had occurred. At the time the plaintiff entered the case, a court date was set for June 12, 1979, and the plaintiff sought no continuances or delays. Instead, the plaintiff spent a great deal of time in the office of the attorney for the defendant's ex-husband going over the answers to the interrogatories and getting as much of the prior discovery as possible. Because of the plaintiff's efforts, the first hearing in this cause was held on June 12, 1979, without any delays as the defendant requested, and the relationship between the attorneys was highly professional in spite of the very emotional feelings of ill will that existed between the parties.

■■ There is ample evidence in the record, therefore, to support the trial court's award of attorney's fees. Accordingly, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

STOUDER and STENGEL, JJ., concur.