LOSURDO BROTHERS, Plaintiff-Appellee, *v.* ARKIN DISTRIBUTING COMPANY, Defendant-Appellant.

Second District   No. 2—83—0636

Opinion filed June 20, 1984.

John T. Perry, Ltd., of Wheaton, for appellant.

Albert Koretzky, of Di Monte & Lizak, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Arkin Distributing Company (Arkin), lessee, appeals from judgments for possession of commercial premises and attorney fees in favor of plaintiff, Losurdo Brothers (Losurdo), lessor, upon Losurdo's complaint in forcible entry and detainer. The issue Arkin presents for review is whether Losurdo, by its failure to respond to Arkin's request that Losurdo consent to Arkin's subletting of the premises, unreasonably withheld consent and thus waived the lease provision requiring such consent prior to subleasing of the premises. Losurdo cross-appeals from the judgment for attorney fees, contending the award is inadequate.

Losurdo's complaint for forcible entry and detainer, as amended, alleged that the parties entered into a written industrial building lease whereby Arkin leased units A, B, and C for use as a toy distributor; that Arkin breached the terms of the lease in various respects including the subletting of the premises without the written consent of Losurdo; and that Losurdo was entitled to possession of the premises upon breach, and attorney fees and costs pursuant to the terms of the lease. Arkin's answer and its answer to an amendment to the complaint generally denied the other allegations of breach and, while admitting it subleased the premises, affirmatively asserted it made its

best efforts to obtain written consent to sublease from Losurdo in writing, but Losurdo unreasonably withheld such consent.

In a bench trial, the testimony and exhibits established that the parties entered into a written lease for five years beginning on April 15, 1978, under which Arkin leased three building units for the stated purpose as a toy distributor. A term of the lease provides that the lessee will not sublet any portion of the premises without first obtaining the written consent of the lessor, which consent shall not be unreasonably withheld by the lessor. A further term of the lease provides that the lessee will pay all reasonable costs, attorney fees and expenses incurred by the lessor in enforcing the covenants of the lease.

On December 15, 1981, Arkin executed a lease with Jeffrey and Mary Kraft, doing business as Ramlyn Metal Products (Ramlyn), for unit C of the premises, for use in Ramlyn's business of precision sheet metal work. The Ramlyn lease, which was to run from January 1, 1982, through December 31, 1984, was made subject to the consent of Losurdo. In a letter dated December 24, 1981, Arkin's attorney requested consent from Losurdo for this sublease. The letter indicated that consent would be assumed if Arkin did not hear from Losurdo by December 30, 1981, and that if Losurdo did not consent, it should specify the reasons for the refusal. The letter also indicated consent to sublease was requested "sometime ago," but was not responded to, and in December 1980, Losurdo had unreasonably withheld consent to sublease to another proposed subtenant. However, no testimony was adduced at trial to support the two prior requests to sublet in the letter. The original of this letter, as well as copies of the Ramlyn lease and the lease application, were either delivered personally to or mailed to Losurdo on December 31, 1981, by Arkin's regional manager, Michael Mack. Losurdo never consented to this sublease, and notified Arkin in a notice to quit to deliver up the premises because of a default by the use of flammable materials in the nature of welding equipment in the premises. Losurdo then filed a forcible entry and detainer complaint on March 30, 1982. This proceeding was continued several times and not heard until May 17, 1983.

In the meantime, during pendency of this suit, in a letter dated July 27, 1982, Mack requested that Losurdo consent to a sublease of unit C to Hanna Car Wash Systems (Hanna). Mack's letter indicated that Arkin had entered into a sublease agreement with Hanna and that the premises would be used for sales offices and warehousing of component parts for car wash equipment and a service truck. This lease, which was executed on July 22, 1982, was for a two-year term beginning August 9, 1982; however, Hanna was given the right to

possession on July 28, 1982, for the purpose of making preparations for the use of the building. Losurdo never gave consent to this sublease. Although the record is not absolutely clear, it appears that Ramlyn took possession of unit C for a short period of time and then Hanna took possession of unit C and was in possession at the time of trial.

On February 19, 1983, Mack wrote to Losurdo, indicating that Arkin had entered into another sublease agreement, this time for unit A with Ron Pilch, owner of Vehicle Maintenance Systems, Inc. No further evidence was introduced on this proposed sublease.

The exhibits and brief testimony recited above were all the evidence offered by the parties relating to the breach of the term of the lease relating to subleasing of the premises. The bulk of the testimony at trial concerned other alleged breaches of the lease and are not pertinent to this appeal, as the trial court found either that they had not been proved by Losurdo, or were not significant enough to terminate the lease. The trial court, however, found that Arkin had repeatedly subleased the premises without the consent of Losurdo contrary to the lease provision and that consent was not unreasonably withheld. The court granted Losurdo possession of the premises and, after a subsequent hearing, awarded Losurdo $1,173.75 for attorney fees although Losurdo had requested attorney fees and costs totalling $3,903.

The principal argument advanced in Arkin's brief in its appeal is that its requests by letter to sublet to Ramlyn and later to Hanna were reasonable, and Losurdo's failure to respond was "an unreasonable act which should bar their [Losurdo's] right to rely" on the prior consent provision and should be construed as "assent" to the proposed subleases. In essence, Arkin maintains Losurdo had an affirmative duty to respond to the requests to sublease, and the failure to do so bars enforcement of the term of the lease requiring written consent. Counsel for Arkin acknowledged at oral argument that the "unreasonable withholding of consent" provision in the lease pertains to the sublessee being suitable and meeting commercially reasonable standards which was not addressed by Arkin in its proofs or in its brief and is not an issue before us. Contrary to Losurdo's statement in its brief that Arkin's principal contention was not affirmatively raised in its answer, we believe this issue was fairly raised in Arkin's pleadings. In addition, proofs were presented on this contention without objection by Losurdo, thereby waiving by its conduct at trial any possible deficiency in Arkin's pleadings. See *Schwarzbach v. City of Highland Park* (1980), 82 Ill. App. 3d 807, 810, 403 N.E.2d 102; see

also Ill. Rev. Stat. 1981, ch. 110, par. 2—612(c).

■ Generally, a lease provision which prevents the lessee from subletting the premises or assigning the lease without the prior consent of the lessor is an enforceable provision, provided the lessor has not unreasonably rejected a suitable subtenant shown by the lessee to meet commercially reasonable standards. (See *Jack Frost Sales, Inc. v. Harris Trust & Savings Bank* (1982), 104 Ill. App. 3d 933, 433 N.E.2d 941; *Arrington v. Walter E. Heller International Corp.* (1975), 30 Ill. App. 3d 631, 333 N.E.2d 50; *Reget v. Dempsey-Tegler & Co.* (1966), 70 Ill. App. 2d 32, 216 N.E.2d 500.) However, the issue before us is not whether Losurdo unreasonably withheld consent to sublet the premises, but whether Losurdo's failure to respond to Arkin's request to sublet operates to bar enforcement of the prior consent provision, or in essence to waive it. Nevertheless, the principle of law stated above regarding the obligation of the lessee to show that its proposed subtenant was suitable and meets commercially reasonable standards is relevant under the factual circumstances present here.

Losurdo was presented by Arkin with the request to consent to sublet to Ramlyn on December 31, 1981, for a subtenancy to begin the next day, January 1, 1982. While the record does not reveal whether possession by Ramlyn actually took place on January 1, the sublease so provided for possession on that day, the record indicates Ramlyn did occupy the premises and pay rent, and Arkin did not present any proofs to the contrary. Nor did Arkin introduce any testimony to prove that any request to consent to this subtenant was made at any time prior to the December 31 request, even though an unsubstantiated reference to a prior request is contained in an original letter dated December 24, 1981, from Arkin's attorney, which was attached to a request to sublet, delivered or mailed on December 31.

As Losurdo correctly contends, Arkin never gave it any opportunity to exercise any reasonable commercial judgment in which to determine whether the proposed subtenancy met commercially reasonable standards. Such standards may include the credit and financial responsibility of the proposed subtenant as well as the type of business to be conducted on the premises and whether the business competes with that of the lessor or any other lessee. (See *Arrington v. Walter E. Heller International Corp.* (1975), 30 Ill. App. 3d 631, 333 N.E.2d 50; *Reget v. Dempsey-Tegler & Co.* (1966), 70 Ill. App. 2d 32, 216 N.E.2d 500.) The lease between Losurdo and Arkin provided that the use of the premises was for the purpose of a toy distributor and included a provision that the premises could not be used for a purpose

which would increase the fire hazard of the building. The proposed subtenancy lease between Arkin and Ramlyn, which was delivered or mailed to Losurdo on December 31, indicated Ramlyn was engaged in precision sheet metal work, certainly a use substantially different from that of a toy distributor conducted on the premises by Arkin. It is also apparent from the record that once Losurdo had made some investigation of the use of the premises, it mailed a "notice to quit" on February 3, 1982, to Arkin specifying a default by the use of flammable materials in the nature of welding equipment used on the premises in violation of a clause in the original lease. This suit for forcible entry and detainer was thereafter filed on March 30, 1982.

■ Under the facts present here, Arkin's delivery or mailing on December 31 to Losurdo of its request for consent to sublet the premises to begin on January 1 gave Losurdo no opportunity to investigate to determine if the proposed subtenant met commercially reasonable standards and no opportunity to respond before the subtenancy began. The occupancy of the premises by Ramlyn after January 1 was a breach of the express term of the original lease prohibiting a subletting of the premises without the prior written consent of the lessor. The failure of Losurdo to immediately respond, under the circumstances, is not a bar to enforcement of the covenant. Thus, even assuming a lessor's failure to respond would constitute a waiver of the right to enforce the prior-consent provision, the lessor must be provided a reasonable period of time to respond, unless a specific time is provided in the lease, and clearly here virtually no time was given for Losurdo to respond.

We also note that Arkin's second request to sublease the same unit C to another proposed tenant, Hanna, was likewise given without much advance notice. The letter request was dated July 27, 1982, for a sublease beginning August 9, 1982. This request was also made after this forcible entry and detainer suit was filed. In any event, the first subtenancy, as discussed above, was a sufficient breach of the lease for the trial court to award possession of the premises to Losurdo.

■ Arkin has also presented a short argument in its brief that Losurdo's failure to respond to the request for consent to sublet and its acceptance of rent from Arkin for the premises should result in Losurdo being estopped from enforcing the prior consent provision in the lease. Estoppel is an affirmative defense which must be affirmatively pleaded and is waived if not alleged. (*In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 929, 428 N.E.2d 1005; *Orchard Brook Home Association, Inc. v. Joseph Keim Land Development Corp.*

(1978), 66 Ill. App. 3d 227, 233, 382 N.E.2d 818.) Arkin may not present a new theory on appeal for the first time. (See *Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 399, 419 N.E.2d 913.) Even considering this argument on its merits, there is no evidence that Arkin relied to its detriment upon Losurdo's words or conduct concerning prior written consent to any sublease before its untimely request on December 31 (see *Justine Realty Co. v. American Can Co.* (1983), 119 Ill. App. 3d 582, 587, 456 N.E.2d 871), and there is an express term in the lease that acceptance of rent shall not operate as a waiver of any breach of the lease.

■ We next consider the cross-appeal of Losurdo in which it contends that the award of attorney fees was inadequate and arbitrary. At a separate hearing on attorney fees and costs, Losurdo's attorney submitted his affidavit itemizing the work he performed, the time spent representing Losurdo, and the costs involved. He listed his normal hourly rate at $100 per hour. He represented that he spent 29.65 hours on the case and would spend three more hours on the attorney fee and costs issue. Costs of $138 for a law clerk's time, automobile mileage expenses, and duplicating costs were listed. The petition also requested $500 for fees paid by Losurdo to a previous attorney. The total request was for $3,903.

During a brief hearing on this issue, Losurdo's attorney also testified the law clerk's time was spent delivering an amended complaint and notice of motion. He also stated that included in his own time spent on the case was his travel time of approximately an hour and three quarters round trip on each of five occasions for hearings at the courthouse in Wheaton. Losurdo's attorney's offices are in Chicago. There was further testimony that another attorney initially hired by Losurdo was paid a $500 retainer fee. It is apparent from the record that this attorney filed the complaint in forcible entry and detainer and made one court appearance at a status call. Neither his bill for services nor any testimony was adduced concerning the precise services, time spent on the case, or his hourly rate.

The trial court refused to award attorney fees for travel time, disallowed attorney fees for Losurdo's previous attorney on the basis that there was no evidence of its reasonableness, and denied the $138 request for specified costs. The court below awarded attorney fees of $1,173.75, commenting that the issues were not complex or difficult.

The general rule in Illinois is that in the absence of a statute or an agreement the successful litigant in a civil action may not recover attorney fees or the ordinary expenses of litigation from his adversary. (*Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 488-89, 426 N.E.2d 1204.)

Provisions in contracts for awards of attorney fees and costs, as is the case here, are an exception to this rule. (*Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 411-12, 462 N.E.2d 488.) A lease which contained a specific provision virtually identical to the clause in this lease that the lessee will pay all reasonable costs, attorney fees and expenses incurred by the lessor in enforcing the covenants of the lease has been held to authorize an award of attorney fees and costs. (*Wanderer v. Plainfield Carton Corp.* (1976), 40 Ill. App. 3d 552, 560-61, 351 N.E.2d 630.) In setting fees, the court in *First National Bank v. Barclay* (1982), 111 Ill. App. 3d 162, 163, 443 N.E.2d 780, stated:

> "The foundation for any award of fees is the amount of time spent by a lawyer on a case, his ability and the complexity of the work. (*Quinsippi Corp. v. Bening* (1982), 105 Ill. App. 3d 241, 242, 433 N.E.2d 1368, 1369; *Larkin Bank v. Ishak* (1976), 43 Ill. App. 3d 918, 357 N.E.2d 840.) Moreover, a party suing for fees must specify the amount of time expended and describe the work performed, whether he is seeking fees from a former client (*Serritella v. Plotkin* (1980), 89 Ill. App. 3d 739, 412 N.E.2d 7), or from an opponent (*Board of Managers, Colony West Townhome Owners Association v. Bucalo* (1979), 69 Ill. App. 3d 287, 387 N.E.2d 53). The amount of fees should be determined on the basis of the facts in evidence, rather than upon speculation. [Citations.]"

(See generally *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019; *Northcross v. Board of Education* (6th Cir. 1979), 611 F.2d 624; *Mt. Vernon Memorial Estates, Inc. v. Wood* (1980), 88 Ill. App. 3d 666, 410 N.E.2d 995; *64 East Walton, Inc. v. Chicago Title & Trust Co.* (1979), 69 Ill. App. 3d 635, 387 N.E.2d 751.) In determining the issue of fees and expenses to be awarded, the trial court's decision will not be disturbed absent a manifest abuse of discretion. *Aluminum Coil Anodizing Corp. v. First National Bank & Trust Co.* (1978), 64 Ill. App. 3d 256, 259, 381 N.E.2d 301.

■ Addressing first the refusal of the trial court to award attorney fees for travel time from Chicago to the courthouse in Wheaton, we do not find this to be an abuse of discretion under the particular facts in this case. The only authority Losurdo cites for an award of attorney fees for travel time to court is a general statement to that effect in *In re Pine* (7th Cir. 1983), 705 F.2d 936. Here, the issues were not complex, requiring an attorney with specialized skills to be employed outside the general area of where the lawsuit was filed. Thus, any additional attorney fees incurred by Losurdo due to the tra-

vel time of his chosen attorney beyond that generally incurred by attorneys in the area of the court proceeding was not a reasonable expense for which Arkin is responsible under the provision in the lease making it responsible for reasonable attorney fees. Likewise, the costs requested for mileage were properly denied.

■ The trial court also refused to allow attorney fees for Losurdo's initial attorney. The only testimony of his services was that he was paid a $500 retainer fee. While it is apparent that this attorney did file a complaint for forcible entry and detainer and attended a status hearing, no paid bill or testimony itemizing his services, time spent on the case, or hourly rate was submitted. The amount of fees should be determined on the basis of the facts in evidence, rather than upon speculation. (*First National Bank v. Barclay* (1982), 111 Ill. App. 3d 162, 163-64, 443 N.E.2d 780.) Losurdo had the burden of proving the reasonable value of the legal services rendered. (*Fiorito v. Jones* (1978), 72 Ill. 2d 73, 95, 377 N.E.2d 1019.) The trial court correctly concluded that there was no evidentiary basis for the reasonableness of the $500 retainer fee.

■ Losurdo also contends it is entitled to costs incurred for a law clerk's time spent on the case and duplicating expense. While there is general authority that a law clerk's services on legal matters are compensable (*Fiorito v. Jones* (1978), 72 Ill. 2d 73, 89, 377 N.E.2d 1019; *Merchandise National Bank v. Scanlon* (1980), 86 Ill. App. 3d 719, 727, 408 N.E.2d 248), the only proof of the law clerk's services was that the clerk delivered an amended complaint and notice of motion to opposing counsel for which Losurdo asked for $40 per hour totalling $84. It is apparent that the law clerk was not performing legal work and that the majority of this time was travel. The trial court properly refused to award this request as costs as well as denying a $3 duplicating expense which, unless extraordinary, is normally associated with office overhead expense included within the attorney's hourly rate.

■ Finally, we address the issue whether the actual attorney fee of $1,173.75 awarded was arbitrary and inadequate. The attorney fee request was based upon 32.65 hours spent on the case. This was properly itemized in his affidavit. However, deducting from that time, as we concluded above, the five occasions Losurdo's counsel charged 1¾ hours on each trip for travel time, the amount of time spent is approximately 24 hours. The comments of the trial court during the fee hearing disclose that it also specifically questioned the necessity of the number of hours spent on a particular portion of the legal services upon which Losurdo's attorney had been cross-examined. Additionally,

the court mentioned the relatively uncomplicated nature of the litigation. These were proper considerations. (See *Damac, Inc. v. Whitler* (1983), 118 Ill. App. 3d 560, 563, 455 N.E.2d 254.) Having considered the entire record, we conclude the trial judge was not arbitrary and capricious in awarding less than what was sought.

■ Arkin has not responded in its brief to Losurdo's request for attorney fees and costs incurred in the appeal of this case. Where as here, the agreement between the parties expressly provides for the lessee to pay all reasonable attorney fees and costs incurred by the lessor in enforcing the covenants of the lease, we conclude that it applies to such fees and costs on appeal where the lessor is successful in its lawsuit. (*Presbyterian Distribution Service v. Chicago National Bank* (1962), 36 Ill. App. 2d 1, 5, 183 N.E.2d 525; *cf. Mt. Vernon Memorial Estates, Inc. v. Wood* (1980), 88 Ill. App. 3d 666, 670, 410 N.E.2d 995.) The amount of the attorney fees and costs on appeal are more properly determined upon a petition and evidentiary hearing in the trial court, and we remand for this purpose. *Mt. Vernon Memorial Estates, Inc. v. Wood* (1980), 88 Ill. App. 3d 666, 410 N.E.2d 995; *cf. Federal Insurance Co. v. Maritime Shipping Agencies, Inc.* (1978), 64 Ill. App. 3d 19, 33, 380 N.E.2d 873.

For the foregoing reasons, the judgment is affirmed, and the cause remanded for consideration of attorney fees and costs incurred on this appeal.

Affirmed and remanded with directions.

SEIDENFELD, P.J., and HOPF, J., concur.