HERITAGE PULLMAN BANK AND TRUST COMPANY, Trustee, Plaintiff-Appellee, v. EVELYN RAFACZ CARR, Defendant and Cross-Defendant-Appellant (Melanie Dendor, as Ex'r of the Estate of Walter Rafacz, Deceased, Defendant-Appellant; Norman J. Barry, as Ex'r under the Last Will and Testament of Edward A. Rafacz, Deceased, *et al.*, Defendants and Cross-Plaintiffs-Appellees.

First District (2nd Division)   No. 1—91—3470

Opinion filed September 28, 1993.

Henry Thrush Synek, of Chicago, for appellants.

Querrey & Harrow, Ltd., of Chicago (Michael Resis, Dennis Marks, and Donald Gancer, of counsel), for appellee Heritage Pullman Bank & Trust Company.

Rothschild, Barry & Myers (Jonathan Rothschild, of counsel) and Winston & Strawn (Calvin Sawyier, of counsel), both of Chicago, for appellee Norman J. Barry.

JUSTICE HARTMAN delivered the opinion of the court:

Heritage Pullman Bank & Trust Company (Trustee) filed a two-count complaint seeking a declaration of whether a simple majority or unanimity of the beneficial owners was required to authorize the sale of property in a land trust. The Trustee interpleaded as defendants the four beneficiaries, each holding a 25% beneficial interest: Evelyn

Rafacz Carr, Walter Rafacz,[1] the estate of Henry Rafacz, and the estate of Edward Rafacz.

After a settlement, in which the parties stipulated that only a simple majority direction was required, the Trustee petitioned for its expenses. Two beneficiaries, the estates of Edward and Henry Rafacz (collectively the Estates), cross-claimed against another beneficiary, Carr, claiming she should pay the Trustee's expenses because she took a groundless position causing the litigation. The circuit court found in favor of the Trustee as against all the beneficiaries, and in favor of the Estates as against Carr. Carr and the estate of Walter Rafacz appeal (collectively appellants), presenting as issues for review whether the circuit court erred (1) in not holding a full evidentiary hearing on the Trustee's petitions for expenses; (2) in finding that an actual controversy existed; (3) in awarding the Trustee its expenses in accordance with the trust agreement; (4) in finding that Carr took a groundless position; and (5) in not finding that the Estates' attorney took groundless positions which caused the litigation. For reasons which follow, we affirm.

The relevant facts are adduced from witness testimony presented at an evidentiary hearing conducted before the circuit court over the course of several days.

According to the trust agreement as originally executed on October 3, 1957, by Andrew and Agnes Rafacz, the power of direction was placed in the beneficiaries. The trust agreement was amended on October 15, 1957, to provide expressly that the power of direction was placed in the holders of the majority of interest in the trust. On October 3, 1977, the trust agreement was extended for an additional 20 years under the same terms and conditions.

One real estate parcel in the trust consisted of 45 acres fronting on Mannheim Road and running east on 94th Avenue, in the Village of Orland Park, Illinois. This property was valued between $2 and $4 per foot; at $4 per foot, it was worth well in excess of $6 million.

For sometime prior to the settlement, attorney Norman Barry represented all the beneficiaries except Carr. Barry had been the attorney of the Rafacz family for over 30 years, having represented Andrew and Agnes Rafacz when the trust agreement was first executed in 1957. He represented all the beneficiaries when the trust was

---

[1]Walter Rafacz died during the course of litigation and Melanie Dendor, the executor of his estate, was substituted as a party.

amended in 1957 and extended in 1977, and the entire Rafacz family when several real estate parcels were sold out of the trust.

On February 11, 1987, Barry wrote Eileen Trost, who was then Carr's attorney, that a majority of the trust's beneficiaries wished to market the remaining property held in the trust and suggested that a meeting be held. On February 20, Trost wrote back that Carr was not interested in selling any property and declined the offer to meet.

On February 26, 1987, Barry received a written proposal from Jack Weglarz and Dr. Thomas Powell to purchase the aforementioned parcel in the trust for $5.4 million. Barry wrote Mrs. Edward Rafacz, Henry Rafacz, and Walter Rafacz informing them of the proposal. These three individuals were Barry's clients, and they collectively owned 75% of the beneficial interest in the trust. Barry testified he believed that the proposal was a "negotiating document," Weglarz and Powell were the best two prospects to buy the property, and a deal would be put together in the near future. Weglarz and Powell told Barry they had a contract with Wal-Mart to be a tenant. Barry told his clients not to accept the proposal as it stood because he thought the sale price could be negotiated upwards.

Subsequent to Trost's February 20 letter, Barry asked Trustee representatives Vicki Baker and Malcolm Campbell whether the Trustee would act upon a majority direction. Barry told Campbell he represented a majority of the beneficiaries and had received a proposal to sell the real estate which he thought "would come to fruition." Baker and Campbell told Barry that the Trustee would insist upon a unanimous direction. Barry objected, claiming that the trust terms require only a majority direction.

Campbell's opinion was based upon his interpretation of assignments of beneficial interest which he thought changed the substantive terms of the trust agreement concerning the power of direction. His opinion was never communicated to Carr or Trost. Barry told Campbell that the assignments had no effect on the power of direction and submitted affidavits in support of his position to Campbell around April 12, 1987.

The week before this lawsuit was filed, Barry told Gancer, the Trustee's general counsel, that he represented a majority of the trust beneficiaries; he had a broker to market the property; he thought a sale would occur within a short period of time; and the trust terms require the Trustee to act on a majority direction, and he expected it to so act if it received such a direction. Their conversations were confirmed in Gancer's letter to Barry and Trost on April 24, 1987.

Gancer testified that he told Barry before the lawsuit was filed that he believed only a majority direction was required. Gancer also told Barry that Carr believed a unanimous direction was needed.

Christopher Joyce, the Trustee's vice-president in charge of the trust department, was also aware that Barry and Carr had taken opposing positions. Joyce believed a majority direction was sufficient.

Shortly before this lawsuit was filed, Trost and Carr discussed whether majority or unanimous consent was required. Carr testified she told Trost she wanted unanimous consent to be required; she had no opinion prior to that time whether unanimous consent was required; she had never paid attention to what was required under the trust agreement and had not received an opinion by Trost; she never spoke to any Trustee representative about this issue and no one ever told her unanimity was required; she believed unanimous consent was required because previous directions had been unanimous; she and Trost examined the trust files in February or March 1986, and Carr did so again subsequently; and, at that time, Trustee records (a control sheet) advised Carr unanimity was required. The control sheet Carr referred to did indicate that a unanimous direction was needed; however, Carr never alleged that the control sheet confused her until March 1988, despite the many documents she had filed in the circuit court before then.

Carr submitted an affidavit of Campbell, which corroborated her claim that she and Trost examined the trust file. Campbell further swore that neither he nor any Trustee representative commented upon the legal significance of any trust document; the control sheet is a document prepared for internal use only and has no legal significance; no Trustee representative told Carr, Trost, or anyone else that unanimity was required; and Carr had never referred to the control sheet in her conversations with Trustee representatives.

Trost told Gancer that unanimous direction was required. In an April 24 letter, Gancer wrote that Trost had suggested the extension of the trust agreement in 1977 was not legally effective to continue in force the amendment of 1957. Trost never provided any legal authority to support her position although Gancer requested it. Trost maintained the unanimity posture after Gancer told her the trust documents provided for a majority direction. Trost knew her statements to Gancer carried an implicit threat that the Trustee would be acting at its own risk if it acted upon a majority direction. According to Gancer, if Trost had not insisted upon unanimity, then the Trustee would not have filed this lawsuit and would have acted upon a majority direction.

After the hearing, on September 5, 1990, the circuit court held that the Trustee acted properly in filing the declaratory action based on an actual controversy that was ripe for adjudication; Carr had taken a groundless position and should be charged with the Trustee's fees, costs, and interest as set forth in the trust agreement; and the Trustee was entitled to reasonable fees. The court directed the Trustee to itemize the fees requested, which the court would review for reasonableness.

On March 20, 1991, the circuit court entered a second order and found in favor of the Trustee as against all defendants and awarded fees, costs and interest through January 2, 1990, in the amount of $54,778.55. The court also found in favor of the Estates as cross-claimants against Carr, in such amounts as to indemnify themselves completely against the Trustee; and that the Trustee had presented competent evidence of its reasonable fees, which defendants failed to rebut. Attached to the order were itemized statements for services from April 21, 1987, through January 2, 1990. The court stated that defendants had the opportunity to review the itemizations and did not object to their accuracy.

## I

Appellants initially contend the circuit court erred in not holding a full evidentiary hearing on the Trustee's petitions for fees, contrary to its own order. First, appellants claim that the court held no evidentiary hearing whatsoever. They assert that they served the Trustee with notices to produce witnesses and documents, with which the Trustee failed to comply. Appellants next insist that the evidentiary hearing which was held was inadequate. They urge that Gancer, the Trustee's general counsel, was the only witness produced by the Trustee, and his testimony was unproductive for the Trustee because Gancer repeatedly was unable to answer questions, and weightless because he is the Trustee's lawyer, director, and part owner. Appellants further contend that the exhibits attached to the order are self-serving and were not admitted for the truth of the matters stated therein.

The Trustee, correctly noting that appellants have failed to cite any legal authority in their brief whatsoever, urges this court to deem appellants' argument waived for purposes of review. A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive legal arguments presented, and issues not sufficiently presented can be waived. (*Vincent v. Doebert* (1989), 183 Ill. App. 3d 1081, 1087, 539 N.E.2d 856.) Appellants have failed to meet these minimum requirements. Their presentation of this issue

amounts to a few pages of rambling, conclusional statements, with Xerox copies of record pages interspersed throughout. Consequently, we deem this issue waived. Were we to address the issue on its merits, however, appellants' contention would fail.

Appellants' claims are belied by the record. The circuit court heard evidence from seven witnesses over the course of several days and conducted a full evidentiary hearing on all the issues. The notice to produce which appellants insist was ignored by the circuit court is not contained in the record. Moreover, appellants' attorney admitted at a hearing that he did not insist on the production of other witnesses in addition to Gancer "because they're going to say the same thing."

## II

■ Appellants next argue that the circuit court erred in finding that an actual controversy existed because no sale was imminent.

The statute governing declaratory judgments provides that a court may make a binding declaration of rights including the determination of the construction of any written instrument "in cases of actual controversy." (Ill. Rev. Stat. 1987, ch. 110, par. 2—701 (now 735 ILCS 5/2—701 (West 1992)).) The declaratory judgment procedure is designed to settle and fix rights before there has been an irrevocable change of position of the parties; however, declaratory relief is not available in cases involving hypothetical questions or mere abstract propositions of law. *Amos v. Norwood Federal Savings & Loan Association* (1977), 47 Ill. App. 3d 643, 645, 365 N.E.2d 57; see *A. S. & W. Club v. Drobnick* (1962), 26 Ill. 2d 521, 523, 187 N.E.2d 247.

Here, we agree with the circuit court that an actual controversy existed which was ripe for adjudication. A direction by the beneficiaries was required for the Trustee to accept an offer to buy the property. Barry had informed the Trustee that he thought a deal would be agreed upon soon, and he expected the Trustee to act upon a majority direction. Carr had taken the contrary position that unanimity was required. Carr's attorney acknowledged that her statements to the Trustee carried an implicit threat of the Trustee being subject to liability if it acted upon a majority direction. Evidence was submitted showing that a sale for the property was being negotiated. Within eight days of the Trustee filing suit Barry told the Trustee that a sale was "imminent" and would occur shortly. The court correctly found it appropriate for the Trustee to seek a declaratory judgment rather than wait until it was asked to act upon a majority direction. Under similar circumstances, courts have held that an actual controversy ex-

ists which warrants a declaratory action, although no contract has been executed. See *Drobnick*, 26 Ill. 2d 521, 187 N.E.2d 247; *Amos*, 47 Ill. App. 3d 643, 365 N.E.2d 57; *Crest Commercial, Inc. v. Union-Hall, Inc.* (1968), 104 Ill. App. 2d 110, 243 N.E.2d 652.

## III

The Trustee asserts that the circuit court properly awarded it fees, costs, and interest in accordance with the trust agreement.

■ A trustee found to be without fault is entitled to reimbursement from the trust fund for all expenses properly incurred in administering and defending the trust. (*Webbe v. First National Bank & Trust Co.* (1985), 139 Ill. App. 3d 806, 810, 487 N.E.2d 711.) The decision of whether to award fees rests in the discretion of the circuit court (*First National Bank v. Singer* (1990), 192 Ill. App. 3d 745, 748, 549 N.E.2d 940) and will not be disturbed absent an abuse of that discretion. (*Johns v. Klecan* (1990), 198 Ill. App. 3d 1013, 1019, 556 N.E.2d 689.) Because we concluded that the Trustee acted properly in filing the declaratory action, it follows that the Trustee is entitled to its reasonable expenses.

Appellants argue that the circuit court erred in finding that payment of the fees by the Trustee to its own counsel is *prima facie* evidence of reasonableness. In part, the circuit court relied on the rule that evidence of legal services having been paid is *prima facie* proof of the reasonableness of the charges for the services performed. (See *Wicks v. Cuneo-Henneberry Co.* (1925), 319 Ill. 344, 349, 150 N.E. 276.) The application of this rule is unfair where, as here, the Trustee is in a position to pay its own legal fees. Nevertheless, the circuit court here also found that the Trustee presented testimony and exhibits detailing the services performed, by whom performed, the time expended, and the hourly rate charged. The court reviewed the exhibits pursuant to the standards in *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 983-84, 518 N.E.2d 424, and applied the court's experience as allowed in *In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 411, 484 N.E.2d 890. The court specifically held that the fees charged were reasonable and necessary for each litigation event listed. We agree and affirm the circuit court's award of expenses to the Trustee.

## IV

■ Appellants identify circuit court error in finding that Carr took a groundless position and, therefore, maintain the court improperly ruled in favor of the Estates as cross-claimants against Carr.

Appellants contend that Carr cannot be held to have taken a groundless position when a trust officer, Campbell, at one time believed a unanimous direction was required due to certain assignments which he thought changed the terms of the power of direction. Appellants correctly note that a control sheet kept by the Trustee stated that it would act only upon an unanimous direction. Carr maintains that she and Trost found the control sheet in the Trustee's files, and that this control sheet caused Carr's confusion. Appellants further attack Campbell's credibility, noting that his testimony was inconsistent regarding whether unanimity was required. They also question his claim that the control sheet was an internal document with no significance.

The evidence which supports the circuit court's finding that Carr took a groundless position is as follows. Before the lawsuit was filed, Gancer, Joyce, and Barry all agreed that a majority direction was required. Only Carr took the position that a unanimous direction was needed. Carr, through her attorney, failed to provide any legal authority to support her position. Carr herself testified that she told Trost she wanted unanimous consent to be required; she had no opinion prior to that time whether unanimous consent was required; she had never paid attention to what was required under the trust agreement and had not received an opinion by Trost; she never spoke to a Trustee representative about this issue and no one ever told her unanimity was required; and she believed unanimous consent was required because previous directions had been unanimous. Finally, Gancer testified that the Trustee would not have filed the declaratory action except for Carr's contention that unanimity was required.

In addition, the circuit court, in addressing Carr's claim of confusion caused by Trustee records, wrote:

"The evidence presented at trial by Carr does not show that she was confused by the control sheet. First, Carr did not prove that the control sheet was a trust instrument. Second, though she testified that she found the control sheet with her attorney Trost as early as March, 1986, she did not allege that it confused her until pleadings were filed two years later on March 14, 1988, despite the fact she had previously filed many briefs and affidavits in this case. Third, Carr testified she had not discussed with Heritage whether the Trust documents required unanimous consent. Carr's testimony is that she believed unanimous consent was required, even before Trost gave her an opinion. She testified that she believed unanimous consent was required because previous directions had been unanimous.

Nothing in this testimony even purports to support Carr's assertion that she was confused by Heritage's documents. Accordingly, Carr has failed to present the evidence of fault on Heritage's part which would warrant denial of its petition for fees."

It is the function of the circuit court to resolve conflicting testimony by addressing the credibility of witnesses and the weight to be accorded their testimony, and these findings will not be disturbed unless they are against the manifest weight of the evidence. (*Berg & Associates, Inc. v. Nelsen Steel & Wire Co.* (1991), 221 Ill. App. 3d 526, 539, 580 N.E.2d 1198.) The circuit court's findings are not against the manifest weight of the evidence. Accordingly, we affirm its holding that Carr's position was groundless.

## V

■ Appellants lastly maintain the circuit court erred in not finding that Barry took groundless positions which caused the litigation, and that Barry falsely told the Trustee he represented a majority of the beneficiaries. In support, appellants reiterate the facts that lend credibility to its argument. A review of the record reveals that the circuit court's implicit findings in this regard are not against the manifest weight of the evidence. (See *Berg & Associates, Inc.*, 221 Ill. App. 3d at 539.) Appellants' argument fails.

For the foregoing reasons, the judgment of the circuit court is affirmed. We remand to the circuit court for a petition and evidentiary hearing on the Trustee's request for fees accruing since January 2, 1990. *Losurdo Brothers v. Arkin Distributing Co.* (1984), 125 Ill. App. 3d 267, 277, 465 N.E.2d 139.

Affirmed and remanded with directions.

McCORMICK, P.J., and DiVITO, J., concur.